(96 App. Div. 305.)

### YOUNG v. MASON STABLE CO., Limited.

(Supreme Court, Appellate Division, First Department. July 13, 1904.)

**1. MASTER AND SERVANT—APPLIANCES—DEGREE OF CARE BY MASTER.**

> An employer using an elevator in his business is bound to use ordinary care and caution to provide one reasonably safe for the purpose for which it was intended, and to maintain it in a condition of reasonable safety during the period of its use.

**2. SAME.**

> The duty resting on an employer using an elevator in his business to provide an elevator reasonably safe for the purpose for which it was used, and to maintain it in a condition of reasonable safety during the period of its use, does not require him to furnish the best known elevator, but the duty is discharged when he furnishes an elevator reasonable and suitable, such as is ordinarily used in the business, and which is in good repair, the test being whether the selection was reasonable, prudent, and careful.

**3. SAME—PERSONAL INJURIES—NEGLIGENCE.**

> Defendant in an action by an employé to recover for injuries caused by the fall of an elevator was shown to have employed two persons to examine and put the elevator in order a short time before the accident. One had been in the business of constructing elevators of the same class as the one which fell. The other had been engaged in the construction and repair of elevators of the same character for over nine years, and he did the last work on the elevator about one month before the accident occurred; testifying that, when he left the elevator, nothing remained to be done to make it perfectly safe. The elevator was of comparatively simple construction, and was not intended for the use of passengers, and employés were forbidden to ride on it; its use being to raise and lower carriages and grain, which was done by hand from the outside. *Held*, that the failure of defendant to also procure an inspection of the elevator by a skilled engineer was not evidence of negligence.

**4. SAME—EVIDENCE—SUFFICIENCY.**

> In an action by an employé for injuries caused by the fall of an elevator, resulting from the wire cable supporting the elevator pulling through a steel clamp which fastened it to the cable where it passed through the eye of the hanger, it appeared that defendant had employed two competent men at different times shortly before the accident to examine and put the elevator in repair; the last one doing work on the elevator about a month before the accident, who testified that when he left it nothing remained to be done to make it perfectly safe. There were no safety clutches on the elevator, but there was evidence that many such elevators were used without safety clutches, though some had them. The elevator was one of simple construction, not intended for the use of passengers, and employés were forbidden to ride on it; its use being to raise and lower

carriages and grain, which was done by hand from the outside. On the date of the accident, plaintiff was ordered to go to the top story of the building and bring down a carriage. While engaged in the work of putting the carriage on the elevator, it suddenly and without warning fell to the bottom of the shaft, severely injuring the plaintiff. *Held* insufficient to show negligence on the part of defendant.

5. SAME—ADMISSIBILITY.

In an action by an employé against his employer for injuries caused by the fall of an elevator, resulting from the wire cable supporting the elevator pulling through a steel clamp which fastened it to the cable where it passed through the eye of the hanger, the admission of the testimony of a witness who examined the elevator and the fastening several years after the accident that at that time it was fastened with two clamps, whereas at the time of the accident it had only been fastened with one, was erroneous; the testimony being received without any limitation being placed on its force and effect.

O'Brien and McLaughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Joseph C. Young against the Mason Stable Company, Limited. From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Albert Stickney, for appellant.
John C. Robinson, for respondent.

HATCH, J. The plaintiff by this action seeks to recover damages for injuries alleged to have been received on account of the negligent manner in which the defendant maintained an elevator. The defendant is a corporation engaged in the livery stable business at 17 East Twenty-Eighth street, in the borough of Manhattan, city of New York. It had been an occupant of these premises about six months. Plaintiff had been in its employ for six years as a general utility man, and was so employed at the time of the accident. The elevator consisted of an open platform about 6 feet wide by 14 feet long. At the sides and about the center were wooden uprights, with a crossbar connecting them at the top, of a sufficient height to permit a carriage to run underneath. It was operated by hand power by means of an endless rope passing over a wheel at the top of the elevator shaft, and then down through the various floors of the building on the outside of the shaft. The elevator could be operated upon any floor from the outside by pulling the rope in one direction to make it go down, and in the opposite direction to cause it to ascend. The elevator itself was hung by means of a wire cable, the upper ends of which were wound around a drum at the top of the shaft, and the lower end passed through the eyehole of an iron hanger which was fixed in the center of the crossbars which connected the top of the two uprights. This steel cable passed through the eye of the hanger, and was turned back, and the end fastened to the main cable again by a single steel clamp. Upon the 7th day of November, 1900, the plaintiff was ordered by his immediate superior to go to the top story and bring down a heavy top carriage, called a "landau." While en-

gaged in putting the carriage upon the elevator, it suddenly and without warning fell to the bottom of the shaft, and the plaintiff received very serious injuries. It was conceded upon the trial that the accident was occasioned by the wire cable supporting the elevator pulling through the clamp. When released from the restraining hold of the clamp, the cable was drawn through the eyehole of the iron hanger, and this condition left the elevator without any support, by reason of which it fell.

The evidence given upon the trial, we think, was sufficient to authorize the jury to exonerate the plaintiff from any charge of contributory negligence. This branch of the case therefore needs no farther discussion.

The serious question arises upon the proof to establish the negli-·gence of the defendant. The court held, and we think correctly, that the obligation resting upon the defendant was to use ordinary care and caution to provide an elevator reasonably safe for the purpose for which it was intended to be used, and was required to exercise the same degree of care in maintaining a condition of reasonable safety during the period of its use. In construction of this rule, the court charged:

"The duty incumbent upon an employer, of furnishing a safe machine for its employee to work with, does not require it to furnish the best known appliances. His duty is discharged when he furnishes an appliance reasonable and suitable, such as is ordinarily used in the business, and which is in good repair; and the test by which to determine whether he has performed that duty is not satisfied by the answer to the inquiry whether better appliances might have been obtained, but whether the selection made was reasonable, prudent, and careful."

The rules of law thus announced, we think, correctly and accurately state the obligation of the defendant. The court further held and charged that the fall of the elevator, standing alone, as an independent fact, did not establish the negligence of defendant, but that, when taken with the surrounding circumstances, the jury might find therefrom that the defendant was negligent in the maintenance of the elevator in a manner so insecure that it fell. In this respect the charge was as favorable to the defendant as it was entitled—perhaps more so. In application, however, of the proof under these rules of law, we think the negligence of the defendant was not established with that strength of evidence which the law requires. It was testified to by the manager of the defendant that in August, prior to the accident, he employed one Murtaugh to examine this elevator and put it in perfect order. Murtaugh has since died. He had been in the business of furnishing elevators for a great many years, and, in his business, constructed dumbwaiters and hand elevators; i. e., elevators whose movements were made and controlled by the hand, without other power. This elevator was of that class. He had also during this period of time repaired and put such elevators in order, and employed mechanics for that purpose. The defendant's manager gave Murtaugh the order to repair in August, but the work of examining and repairing the elevator was not done until the following September, and the last work done upon it was about the 9th day of

October, when the mechanic put in a bolt and finally fastened the clamp. He testified:

"When I left this elevator I left it as a good job—one which, in my opinion, was a finished and complete job. Nothing further remained to be done to make the elevator perfectly safe."

This witness had been engaged in the construction and repair of elevators of this character for nine years and upwards. There was no attempt made to discredit his skill and fitness to do the work, and nothing which appeared detracted from his ability as a competent mechanic, to whom it was proper to submit the repair and restoration of this elevator. Nor is there any doubt or discredit cast upon the statement of this witness as to the time when he did this work, and the manner in which it was finished. The dates were accurately fixed by the bill which was rendered, and which the defendant paid. Upon undisputed proof, therefore, coming from credible witnesses, it appeared that a month prior to this accident the defendant had caused to be employed a competent person to put this elevator in perfect repair; that such person did the work, and the defendant paid therefor. What more was required in order to discharge the obligation of reasonable care, and how could the defendant have done more to meet such obligation, unless it had a special or continual inspection of the elevator following the time when it was informed that it had been put in perfect order? Upon this subject the court charged the jury:

"It is fair to say that there was no inspection of the elevator by an engineer, or by an expert skilled in exact construction, except so far as Mr. Murtaugh, the gentleman applied to to make the repairs, may be deemed to be an expert. Mr. Murtaugh was a practical man—a practical builder of such elevators—but he was not, so far as otherwise appears, a skilled engineer, or a person who could, in the examination of a thing of that kind, point out in a scientific way what was necessary to make them safe. He may have been able, in his experience as a practical man, to construct similar elevators. But the fact that there was no inspection by a skilled engineer is a fact to be considered by you upon the question as to whether the defendant did all that it was his duty to do to make the elevator safe and secure."

This charge imposed an obligation upon the defendant beyond what the law required. When it had procured a man who was a practical builder and constructor of these elevators, who made them, and consequently must have been entirely familiar with them and their method of operation, it would seem to meet all of the requirements of the rule. The court, however, went further, and submitted the question as to whether, in addition to this care and caution, the defendant ought not to have further procured inspection by a skilled engineer. Such requirement treads closely upon, if it does not embrace, the obligation of extraordinary care, and that duty is not imposed even as to passenger elevators. Griffen v. Hanice, 166 N. Y. 188, 198, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630. The obligation is always relative. This was an elevator of comparatively simple construction. It was not intended to be used for the purpose of carrying passengers or employés. The employés were in fact prohibited from riding upon it. The use to which it was devoted was the hoisting and lowering of carriages and grain, which was done by

hand from the outside. Manifestly, under such circumstances, the doctrine of reasonable care did not require an inspection of the elevator by a skilled engineer, in addition to the inspection already had. No case of which we are aware has extended the doctrine of reasonable care beyond this point, as applied to an elevator of this character. There were no safety clutches upon the elevator, but the proof upon the part of the plaintiff shows that many of these elevators were used without such safety clutches, and some had them. Under the rule announced by the court, the absence of clutches was not regarded as constituting an element upon which to predicate negligence. We think, therefore, that, upon the undisputed proof, the evidence is insufficient to justify a finding that the defendant had not exercised reasonable care, and that whatever presumption arose from the fall of the elevator itself was fully and completely explained, as was the defendant's attitude thereto. We think, therefore, that the verdict was without sufficient evidence to support it in this respect.

In addition to this, a fatal error was committed in a ruling upon the trial. One Wood was called as a witness, who had been employed about this stable. He testified that on April 8, 1903, he visited the stable with Mr. Charles E. Southard, the plaintiff's expert, and examined the elevator and the fastening of the steel cable. Over objection and exception, he was permitted to testify that at that time it was fastened with two clamps, whereas at the time of the accident it had only been fastened with one. There was no limitation placed upon the force and effect of this testimony. It was received generally in the case. Its manifest tendency was to convey to the minds of the jury an impression distinctly prejudicial—that the substitution of two clamps for the one existing at the time of the accident was a recognition upon the part of the defendant that the first construction was defective—and, with this impression in the minds of the jury, it is easily seen that they would readily be influenced to find the defendant guilty of negligence. Negligence, as was said by Grover, J., in Dougan v. Champlain Transportation Co., 56 N. Y. 1, is "to be determined by what was known before and at the time of the accident." Judge Earl, in considering a similar question, said:

"While such evidence has no legitimate bearing upon the defendant's negligence or knowledge, its natural tendency is undoubtedly to prejudice and influence the minds of the jury." Getty v. Town of Hamlin, 127 N. Y. 636, 27 N. E. 399.

This rule is too familiar to call for further comment.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and PATTERSON, J., concur.

O'BRIEN, J. (dissenting). I dissent from the conclusion of the majority of the court that the evidence is insufficient to justify a finding by the jury of negligence on the part of the defendant.

There was no substantial dispute upon the trial as to the manner in which the accident occurred. The freight elevator, which was operated by hand power, and upon which the plaintiff had just placed a car-

riage which he was making firm upon the platform, suddenly fell; and it was found that the single iron clamp designed to fasten the end of the cable about 10 inches above the eyebolt upon the elevator, through which the cable passed, had come off, so that the end of the cable slipped through the eyebolt, permitting the elevator to fall, and leaving the cable dangling in the shaft. It was admitted by the defendant's witness that most of the strain came upon this single clamp, which, it was testified, measured four inches by an inch and a quarter, and which was held in place by bolts. This clamp, the defendant's expert testified, should, if properly put on, sustain a weight of at least 4,000 pounds, or about twice the actual weight expected; and the carriage which fell with the elevator, it was testified, weighed about 1,700 pounds, being one of the heaviest that the defendant had. The defendant testified that he had ordered James Murtaugh, who was in the business of furnishing and repairing dumbwaiters and hand elevators, to make a complete inspection of the elevator, and attend to any repairs that were necessary, and that, in compliance with this order, repairs were made in September, less than two months before the accident. The inspection was done by one Hansen, who testified that he found several defects, including a defective bolt in the clamp, and he supplied a new one, and that he made other repairs, including a pin under the fly wheel shaft, sheet iron on the drum, a piece of slide which had been worn out, a new check rope, blots in the frame, and an extra counterbalance weight, and then ran the elevator and found it all right. He further testified that his only education was as a mechanic, at which he earned $3.50 a day, and that he had never tested a cable, nor the strength of iron, nor any metal, in his life, and he had not the slightest idea how much strain came on the clamp, and never tried to find out, and that one clamp ought to hold as much as the cable would stand, if properly put on, although he did not mean to say that one clamp would hold as much of a strain as two clamps, and on that kind of elevator it was customary to use one clamp. For the plaintiff, it was testified by a mechanical engineer that the usual and customary method of fastening elevators such as the one described was to pass the cable through the eyebolt twice, and then to put on a clamp just above the eyebolt, and a second clamp six or seven inches further up, and that if but one clamp is used, with a loop through the eyebolt, the strain comes directly on the clamp, and where two are used the strain is divided, and the strength is twice as great, and that a single four-inch clamp, as described, was unsafe to sustain a weight over 2,000 pounds, and might not sustain that weight.

The question presented was whether or not a proper inspection was made, and, in this connection, whether the defendant used care in the selection of an inspector, and whether the inspector in fact adequately performed his duties. Assuming that in hiring a man in the dumbwaiter and hand elevator business, and in permitting the inspection to be actually made by a mechanic who was unfamiliar with testing the strength of materials, the defendant was not negligent, the defendant, as we understand the rule, cannot escape responsibility if that inspection was inadequately made. As to employés, it has repeatedly been held that an employer must provide a safe and proper place in which

to work; and in the case at bar, although it was testified that employés were forbidden to ride upon the elevator, it was not seriously disputed that in the course of their work, as in the present instance, it was necessary for them to go upon it. In Egan v. D. D., E. B. & B. R. R. Co., 12 App. Div. 556. 42 N. Y. Supp. 188, the court held:

"This duty [of inspection of a boiler] was a personal duty imposed upon the defendant. It was not a sufficient performance of this duty that the defendant had appointed a competent person to inspect, but the inspection must be properly done, and, if it was not properly done, the defendant was liable, however competent the person selected as inspector might be. * * * To excuse him from liability, the boiler must have been carefully inspected by a competent inspector."

And in Scandell v. Columbia Const. Co., 50 App. Div. 512, 64 N. Y. Supp. 232, in discussing the master's duty of supplying safe and suitable tools, it was said:

"This is a primary obligation, which cannot be delegated by the master so as to relieve him from responsibility."

And in the recent case of McGuire v. Bell Tel. Co., 167 N. Y. 211, 60 N. E. 435, 52 L. R. A. 437, the court says:

"The duty of the defendant was just as great to safely maintain as to safely construct, and that duty cannot be delegated, so as to exempt the master from liability."

The rule is thus stated in Byrne v. Eastman, 163 N. Y. 461, 57 N. E. 738:

"Reasonable care involves proper inspection, and negligence in respect of it in such cases as this is the negligence of the master, and none the less so when the inspection was committed to a servant."

So, too, in Sarno v. Atlantic Stevedoring Co., 66 App. Div. 611, 74 N. Y. Supp. 578, it is said:

"The duty of furnishing proper appliances for use of the servant, and of exercising reasonable care and prudence to protect the servant from avoidable injury, is the duty of the master, and cannot be delegated."

See, also, Jarvis v. Northern N. Y. Marble Co., 55 App. Div. 275, 67 N. Y. Supp. 80:

"The defendant's ignorance of the defective condition of the interior mast does not relieve him from liability, if by the exercise of proper inspection it could have been discovered."

And in Rowley v. American Ill. Co., 83 App. Div. 612, 81 N. Y. Supp. 1101:

"It was for the jury to decide, from the facts appearing in this case, whether the defendant made a reasonable inspection of this pole, and it may not relieve itself from that burden by showing that it made the ordinary inspection."

The simple character of the mechanical arrangement by which the elevator here was suspended, when supplemented by the information as to the weight which such a clamp, if properly adjusted, could maintain, and the relative strength of a single and double clamps, and the testimony of the inspector as to the repairs he made, made it peculiarly a question for the jury to determine whether there was negligence in the construction, and on the part of the inspector in inspecting and

repairing the elevator. That his attention was called to the clamp appears from the fact that he found one bolt defective, which he repaired, and the jury could properly conclude whether he should have supplied another clamp or made other repairs to secure safety.

With respect to the exception referred to as an additional ground for reversing the judgment, the record shows that the exception was to the ruling of the court admitting, over defendant's objection, the question whether the elevator was in the same condition, and the answer to that question was, "It was not." This answer was in no way harmful to the defendant, and, although it appears that the witness thereafter testified that the steel cable is now fastened with two clamps, no further objection was made or exception taken, so far as appears, to this testimony. The exception, therefore, was not of such a character as to require a reversal; and furthermore it may be said that as the evidence was very clear and ample as to what the condition was at the time of the accident, and was such as would support a finding that the elevator was defective and the inspection was negligently performed, it was competent for the jury to return a verdict holding the defendant liable for its failure to supply a safe place for the plaintiff to work.

I dissent, therefore, and think that the judgment should be affirmed, with costs.

McLAUGHLIN, J., concurs.