### SCOTT v. NAUSS BROS. CO.

(Supreme Court, Appellate Division, First Department. December 2, 1910.)

1. MASTER AND SERVANT (§ 276*)—INJURY TO SERVANT—NEGLIGENCE—EVIDENCE.

In an action for the death of an employé by the fall of a freight elevator, evidence *held* not to show that the accident was due to any severance of the cables holding the elevator, but to the breaking of the keys which connected the hoisting drum with the shaft.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–954; Dec. Dig. § 276.*]

2. MASTER AND SERVANT (§§ 101, 102*)—SAFE PLACE TO WORK—OBLIGATION OF MASTER.

A master employing a servant to assist in raising a freight elevator by pulling on the rope used for the purpose while standing under the elevator must exercise ordinary care to provide an elevator reasonably safe for the purpose and to maintain a condition of reasonable safety during

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

its use, but he need not furnish the best known appliances, but only such as are safe and suitable and ordinarily used in the business.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 180–184; Dec. Dig. §§ 101, 102.*]

3. MASTER AND SERVANT (§ 270*)—INJURY TO SERVANT—EVIDENCE—ADMISSIBILITY.

Where, in an action for the death of an employé while assisting in raising a freight elevator by pulling on the rope used for the purpose while standing under the elevator, caused by the elevator falling on him, no attempt was made to prove that the hand power elevator was not of the type in common use, and no question was raised that it was not suited for the uses to which it was applied, nor any claim of the absence of any proper device to assist in insuring safety in its operation, evidence that a gas engine had at some unfixed time been used to furnish power for the elevator was inadmissible, because the issue was not whether a safer means of supplying power could have been furnished, but whether the one in actual use was reasonably safe and suitable.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 270.*]

4. NEGLIGENCE (§ 121*)—BURDEN OF PROOF—RES IPSA LOQUITUR.

The burden of proof is not shifted from plaintiff to defendant merely because the doctrine of res ipsa loquitur applies, but, where it applies, the presumption establishes a prima facie case for plaintiff, which defendant must then meet.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 224–228; Dec. Dig. § 121.*]

5. MASTER AND SERVANT (§ 265*)—RES IPSA LOQUITUR—APPLICATION OF DOCTRINE.

The doctrine of res ipsa loquitur does not apply in the case of the fall of a freight elevator, while being lifted by employés, causing injury to one of them, because the fall of the elevator may have been caused by improper operation, as well as by structural defects.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908; Dec. Dig. § 265.*]

6. MASTER AND SERVANT (§ 250*)—EMPLOYER'S LIABILITY ACT—LIABILITIES CREATED.

The employer's liability act (Consol. Laws, c. 31, §§ 200–204), in so far as it relates to defects in the ways, works, or machinery connected with the employer's business, is merely declaratory of the existing common law, and an action brought under such provisions is also sustainable under the existing provisions of the common law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 805; Dec. Dig. § 250.*]

7. EVIDENCE (§ 527*)—OPINION EVIDENCE—ADMISSIBILITY.

An expert may give his opinion, in an action for injury to an employé by the fall of a freight elevator, while being raised by employés, based on his examination of the machinery and his experience as a builder and constructor of elevators, as to what was the situation of the elevator when the keys gave way at the shaft on the drum, and as to whether the strain of the elevator platform with the load thereon was sufficient to break the keys.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2334, 2335; Dec. Dig. § 527.*]

Appeal from Trial Term, New York County.

Action by Adelaide E. Scott, as administratrix of William A. McGowan, deceased, against the Nauss Bros. Company. From a judg-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment for plaintiff and from an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

See, also, 126 App. Div. 909, 110 N. Y. Supp. 1145.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

Frederick Hulse, for appellant.
George H. Culver, for respondent.

DOWLING, J. On June 16, 1903, the defendant conducted the Harlem Stables in the city of New York, and in connection therewith maintained, operated, and controlled a freight elevator used for the hoisting and lowering of freight and other articles from floor to floor in the premises which it occupied. This elevator was of the familiar open type, and was operated by hand by means of ropes, by pulling on which it was either raised or lowered.

Plaintiff's intestate, William A. McGowan, was in defendant's employ, and in the course of his duty was required to assist in the raising of said elevator by pulling upon the rope used for that purpose. This he did by standing under the elevator while the other men engaged in the raising stood upon its platform. Owing to its location and to that of the ropes by which its motion was controlled, there was no other place where McGowan could stand and do his work save under the elevator itself. While so engaged upon the day in question, and after he had assisted in raising the elevator to the third floor of the building, as he was about to walk away from the place where he had been working, the elevator suddenly fell, and in its fall caught McGowan and crushed him to death. To recover damages therefor this action is brought by plaintiff under the employer's liability act (Consol. Laws, c. 31, §§ 200–204) upon allegations of the failure of defendant in its duty "to provide for its employés a suitable, safe and sufficient elevator" and to "supply them with suitable, safe, and sufficient means, materials, and appliances to operate said elevator and keep the same in repair," and further allegations that:

"There was a defect in the condition of the ways, works, or machinery connected with or used in the business of the defendant in the operating of said elevator, which arose from or had not been discovered or remedied, owing to the negligence of the defendant or of some person or persons in the service of the defendant and intrusted by it with the duty of seeing that the said ways, works, or machinery were in proper condition, and that in consequence thereof and without any negligence or want of care on the part of the said William A. McGowan, who was engaged in operating said elevator as aforesaid, said elevator suddenly fell upon and so crushed and injured him that it caused his immediate death."

In the notice given under the employer's liability act, it is claimed that the fall of the elevator was occasioned "by the unsafe condition of the elevator, the breaking of one or more of the cables or ropes connected with said elevator or by some other defect in the machinery or appliances used in running the same, and that the said accident was due to the negligence, carelessness, and want of proper attention of Nauss Bros. Company, its agents, servants, or employés."

Upon the trial it was sought to be established by plaintiff that the

fall of the elevator was due to the breaking of the cable by which it was suspended, and by the testimony of three witnesses to the effect that there was but one cable, and that one end of it was broken and hanging over the crossbeam. Another witness also swore that there was but one cable. One of these witnesses was sought to be discredited by a statement which he made some six months after the occurrence, in which he said he did not see any broken ropes, and did not make any inspection of the elevator. Plaintiff did not show the condition of the cable at the point where it was claimed to have broken, and the sole testimony upon that point was that of two witnesses, Amberger and Kreuger, the former of whom, called on behalf of plaintiff, testified that it was an old cable, but he did not examine it, although he swore it was rusty and there was a stain on it. The latter, a witness for defendant, on cross-examination testified that the cables were in good condition, and that they were rusty. Whether this rust was more than superficial, and whether it appeared anywhere near the spot where the cable was claimed to have broken does not appear. On the other hand, defendant produced a witness who in April, 1903, inspected for defendant the elevator in question, including cables (two in number), guides, and all other appliances, and had it operated so that he might examine the cables particularly as they were wound and unwound on the drum. He said that although they were rusty they were in good condition, and that after he had done certain work with respect to a loose key in the hoisting drum, so as to render it secure, he left the elevator and its appliances in perfect condition.

Another witness was sent by the James Murtaugh Company, who are engaged in the business of repairing hand power and electric elevators, to examine the elevator in question shortly after the accident. He found two hoisting cables on the elevator, neither one of which was broken, and discovered the cause of the accident to have been the breaking crossways of one of the keys that fastened the hoisting drum to the shaft, and the splitting lengthways of another key, by reason of which the drum had revolved loosely upon the shaft and the cable unwound, causing the elevator to fall. The carpenter who worked upon the floor of the elevator on the morning after the accident swore that there were two hoisting cables, neither of which was broken. Some six other witnesses also testified that there were two hoisting cables, neither of which was broken after the accident; some of the witnesses being persons who worked upon the repairs to the elevator, and all of them having seen the elevator within a short time after the occurrence in question. A careful examination of all the testimony demonstrates that, by a clear preponderance of testimony, it has been established that there were two hoisting cables attached to the elevator, that neither of them was broken, and that the fall of the elevator was not due to any severance of the cables or either of them, but to the breaking and splitting of the keys which connected the hoisting drum with the shaft, as testified to by the witness O'Brien. It is clear that, so far as the recovery could be predicated upon the theory under which plaintiff sought to recover, the verdict was against the weight of evidence.

Viewing the occurrence in the light of the facts established by the present record, there is no evidence upon which defendant's liability can be predicated. It does not appear how long the condition which caused the accident had existed, although it may be assumed that it could not long have continued without disclosing itself by the revolution of the hoisting drum, the consequent unrolling of the cables, and the immediate falling of the elevator. Nor does it appear that the condition of the two keys, or of either of them, could have been discovered by examination before the accident occurred. There is no claim that the elevator was not properly constructed originally; on the contrary, it affirmatively appears that it was of a familiar type of hand power elevator in common use.

What was defendant's obligation as employer to McGowan as its employé? It is claimed that it was bound to furnish him with a safe place to work. But the place where he was obliged to do this particular work of assisting in raising the elevator was not of itself dangerous, nor was there any defect therein. It became dangerous only when made so by the presence above him of a defective or dangerous elevator. The question resolves itself then into the second theory of the defendant's liability—furnishing him with defective machinery with which to do his work, since the very act of hoisting constituted the source of danger to the employé, in view of the place where his work was required to be done. Defendant was under the obligation, therefore, of using ordinary care and caution to provide an elevator reasonably safe for the purpose for which it was intended to be used, and of exercising the same degree of care in maintaining a condition of reasonable safety during the period of its use. This rule does not require the furnishing of the best known appliances, but such as are safe and suitable, are ordinarily used in the business, and are kept in proper repair. Young v. Mason Stable Co., Ltd., 96 App. Div. 305, 89 N. Y. Supp. 349. In the case at bar there is no attempt made to meet the proof that the hand power elevator in question was of the ordinary type in common use. There is no question raised that it was not suited for the uses to which it was applied. There is no claim of the absence of any proper device to assist in insuring safety in its operation. Evidence was improperly received of a gas engine, not in operation, but which apparently at some unfixed time might have been used to furnish power for the elevator. No liability could have been predicated upon the mere presence of such an engine, for the question was not whether a safer means of applying power could have been furnished, but whether the one in actual use was reasonably safe and suitable. No accident was shown to have occurred while defendant was maintaining the elevator. No specific complaint was ever made about the use of hand power, save that it was hard to pull the elevator up in that way, although there is testimony by one witness that he told the foreman that "it was not an elevator for people to pull at," and the latter said it would be fixed. The elevator was fully inspected and put in condition in April, 1903, and defendant was not allowed to show how frequently it was customary to inspect similar elevators, nor the instructions given by its foreman to the Murtaugh

Company relative to putting the elevator in repair, nor the foreman's knowledge of the repairs actually made, all of which rulings· were erroneous.

This case was submitted to the jury by the learned justice upon the theory indicated by his charge, as follows:

"It is ordinarily necessary that the plaintiff should prove to you by a preponderance of evidence that the accident was caused by the negligence of the defendant, and that the plaintiff in no way contributed to it by his own negligence. In cases like this, however, we must apply the doctrine known in the law as res ipsa loquitur. That phrase means simply, 'The thing speaks for itself.' That is to say, in this case the jury is warranted in inferring negligence from the very fact that the elevator fell, since the accident would not have ordinarily occurred if the elevator and the machinery connected therewith had been in proper condition. It then becomes incumbent upon the defendant to explain by a fair preponderance of the evidence that, even though the elevator did fall and would not ordinarily have fallen had it been in proper condition, nevertheless the accident was not caused by any negligence of the defendant, either in the matter of providing a reasonably safe elevator and appliances to prevent such a fall, or in failing to take such reasonable care to keep the elevator and appliances in a reasonably safe condition. Now, this is the first question that you as judges of the fact must decide. You have heard the testimony concerning the construction and operation of the elevator and concerning what the defendant did, if anything, to keep it in proper repair. Under all the circumstances, has the defendant by a fair preponderance of the evidence satisfied you that it has complied with the conditions I have indicated, so that you can say it was not negligent? If it has, then your verdict must be for the defendant."

Exception was duly taken to the charge that the rule res ipsa loquitur applied to the case. No exception was taken to that part of the charge wherein it was stated, in effect, that the application of the rule shifted the burden of proof to the defendant. But this was clearly erroneous, for as was said in Cunningham v. Dady, 191 N. Y. 157, 83 N. E. 690:

"The burden of showing the cause of the cave-in rested on the plaintiff, and throughout the case he was required to sustain his claim by a preponderance of evidence. This burden is never shifted on the defendant, not even in cases where the maxim invoked applies. Where it applies, the presumption only establishes a prima facie case in favor of the plaintiff, and the defendant is then charged with the obligation of meeting such a case."

The question whether the principle applies in this case was clearly presented by exception.

In Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630, it was said that:

"The application of the principle depends on the circumstances and character of the occurrence, and not on the relations between the parties, except indirectly so far as that relation defines the measure of duty imposed on the defendant. * * * The 'res' therefore, includes the attending circumstances, and, so defined, the application of the rule presents principally the question of the sufficiency of circumstantial evidence to establish, or to justify the jury in inferring, the existence of a traversable or principal fact in issue—the defendant's negligence. The maxim is also in part based on the consideration that, where the management and control of the thing which has produced the injury is exclusively vested in the defendant, it is within his power to produce evidence of the actual cause that produced the accident, which the plaintiff is unable to present."

In Breen v. N. Y. C. & H. R. R. Co., 109 N. Y. 297, 16 N. E. 60, 4 Am. St. Rep. 450, it was held:

"There must be reasonable evidence of negligence, but when the thing causing the injury is shown to be under the control of a defendant, and the accident is such as, in the ordinary course of business, does not happen if reasonable care is used, it does in the absence of explanation by the defendant afford sufficient evidence that the accident arose from want of care on its part."

Hence the rule has been applied in cases where the brick wall of a building fell into the street (Muller v. St. John, 57 N. Y. 567, 15 Am. Rep. 530), and where a piece of metal fell from defendant's elevated track upon a passer-by on the public highway (Goll v. Manhattan Ry. Co., 125 N. Y. 714, 26 N. E. 756; Volkmar v. Same, 134 N. Y. 418, 31 N. E. 870, 30 Am. St. Rep. 678; Hogan v. Same, 149 N. Y. 23, 43 N. E. 403). In all these cases the very occurrence itself imported negligence. But here the fall of the elevator may as well have been a matter of improper operation as of structural defect. This is not a case such as Young v. Mason Stable Co., 193 N. Y. 188, 86 N. E. 15, 21 L. R. A. (N. S.) 592, 127 Am. St. Rep. 939, where the elevator fell when it was stationary and without any apparent cause by reason of the insufficiency of a clamp. It is a case where the employé himself was a part of the operating power of the object which fell; and, under such conditions, it seems to me that the rule res ipsa loquitur has no application. The general rule is thus stated in 26 Cyc. 1411:

"No presumption of negligence on the part of the master arises from the mere existence of a defect or the happening of the accident through which the servant was injured."

In discussing the rule res ipsa loquitur, the following limitations are suggested by Prof. Wigmore in his work on Evidence (volume 4, p. 3557):

"(1) The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user. (2) Both inspection and user must have been at the time of the injury in the control of the party charged. (3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured."

In an action brought before the employer's liability act, it was held that merely showing that a freight elevator fell while being operated with care was not sufficient to overcome the presumption that the master had performed his duty, and that the ordinary rule applied that the servant must show that the machinery or apparatus which caused the accident was defective or out of repair, and that this condition existed for such a length of time that, if the master had performed his duty of inspection, it would have been discovered and remedied. Starer v. Stern, 100 App. Div. 393, 91 N. Y. Supp. 821; Stackpole v. Wray, 99 App. Div. 262, 90 N. Y. Supp. 1045. It has also been held in an action by a servant against the master that the mere collapse of a derrick due to the breaking of an eyebolt did not subject defendant to liability in the absence of proof of negligence.

Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, 79 Am. St. Rep. 608; Welsh v. Cornell, 168 N. Y. 508, 61 N. E. 891. And in Dobbins v. Brown et al., 119 N. Y. 188, 23 N. E. 537, which was an action for causing the death of plaintiff's intestate while in defendant's employ by a fall from a bucket wherein he was being lowered in a shaft some 400 feet deep to his place of labor in a tunnel, and wherein it appeared that after the accident the cable supporting the bucket and dummy yoke was found to be broken at a point about 20 feet above the bucket, and the dummy yoke, broken (with the bucket and a portion of the chain), was found lying at the bottom of the shaft, Chief Judge Ruger said:

"Whatever might have been the cause of death, it was for the plaintiff to show how it occurred. The burden of proof lay upon her to establish the liability of the defendants, and to do this she was bound to show affirmatively, not only the absence of contributory negligence on the part of the intestate, but the negligence of the defendant in respect to some matter which caused the injury complained of. The former may be legitimately inferred from the evidence, but with respect to the latter we have been unable to discover sufficient evidence in the case."

We are referred to no case holding that the burden resting upon the master of reasonable care in the selection of appliances and reasonable inspection thereafter has been changed by the employer's liability act, which, in so far as regards defects in the ways, works, or machinery connected with the employer's business, has been said to work no change in the law of the state and to be declaratory of existing common law principles; so that an action brought under subdivision 1, § 1, of the act, could as well be brought under existing provisions of the common law (Alger & Slater's Employers' Liability Act [2d Ed.] p. 22).

Error was also committed in excluding evidence sought to be elicited from an expert witness as to what in his opinion based on his examination of this machinery and his experience as a builder and constructor of elevators the situation of the elevator was when the keys gave way on the shaft at the drum; and whether the strain of the elevator platform with the load present thereon was sufficient to break the keys. This was a case where, the facts not being of common knowledge and the conclusions to be drawn from the facts depending upon professional or scientific knowledge or skill, the conclusion of the expert in the form of an opinion might be given to the jury for its acceptance or rejection. Dougherty v. Milliken, 163 N. Y. 533, 57 N. E. 757, 79 Am. St. Rep. 608.

By reason of the errors set forth, as well as because the verdict is against the weight of evidence, the judgment and order appealed from must be reversed and a new trial ordered, with costs to the appellant to abide the event.

INGRAHAM, P. J., and McLAUGHLIN and CLARKE, JJ., concur. SCOTT, J., concurs in result.