JOSEPH C. YOUNG, Appellant, *v.* MASON STABLE COMPANY, LIMITED, Respondent.

1. MASTER AND SERVANT — FALL OF ELEVATOR — EVIDENCE. A freight elevator on which plaintiff, who was a servant of defendant, was riding in performance of his duty, fell, whereby plaintiff was injured. There was no evidence of defect in construction other than the inference which might be drawn from the statement of an expert that a different construction prevailed at the time of the accident; no witness gave an opinion that the construction was dangerous in any respect or that the elevator was unsafe for the purpose for which it was designed. *Held,* that defendant could not be charged with negligence on account of defective construction.

2. DUTY OF INSPECTION — SUFFICIENT COMPLIANCE THEREWITH. Defendant employed an expert to inspect the machine, who reported, about four months before the accident, after spending several days in putting the machine in order, that it was safe in every way. *Held,* that defendant might rely on the regular inspection by experts in elevator con-

struction provided the elevator was originally safe and adequate, and that the master made such repairs as the experts advised, and the master's duty was fully discharged by the inspection made, and the repairs resulting therefrom.

*Young* v. *Mason Stable Co.*, 119 App. Div. 865, affirmed.

(Argued October 5, 1908; decided October 23, 1908.)

APPEAL from a judgment, entered April 29, 1907, upon an order of the Appellate Division of the Supreme Court in the first judicial department overruling plaintiff's exceptions, ordered to be heard, in the first instance, by the Appellate Division, denying a motion for a new trial and directing judgment for defendant upon the decision of the Trial Term dismissing the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John C. Robinson* for appellant. It was error to refuse to submit the case to the jury for determination, for the evidence given of the occurrence, with its attendant circumstances, alone, would have justified the jury in finding the defendant negligent. (*Griffen* v. *Manice*, 166 N. Y. 188; *Green* v. *Banta*, 16 J. & S. 156; 97 N. Y. 627; *Mullen* v. *St. John*, 57 N. Y. 571; *Solarz* v. *Manhattan Ry. Co.*, 8 Misc. Rep. 656; 11 Misc. Rep. 715; 155 N. Y. 645.) The issues herein should have been submitted to the jury for determination, and it was error to direct a verdict in defendant's favor. (*Koehler* v. *N. Y. S. H. Co.*, 183 N. Y. 1; *Durkin* v. *Sharp*, 88 N. Y. 225; *Byrne* v. *Eastmans Co.*, 163 N. Y. 465; *Bailey* v. *R., etc., R. R. Co.*, 139 N. Y. 302; *Fuller* v. *Jewett*, 80 N. Y. 46.)

*William H. Corbett* and *Albert Stickney* for respondent. The burden of proof was on the plaintiff to establish, by affirmative evidence, that the accident was due to defendant's negligence. (*Laidlaw* v. *Sage*, 158 N. Y. 101; *Ruppert* v. *B. H. R. R. Co.*, 54 N. Y. 94; *Rose* v. *B. & A. R. R. Co.*, 58 N. Y. 222; *Travel* v. *Bannerman*, 174 N. Y. 52; *Hart* v. *H. R. B. Co.*, 84 N. Y. 62; *Hale* **v.**

*Smith,* 78 N. Y. 483.) After the evidence of repair and subsequent inspection it was incumbent on plaintiff to prove affirmatively some imperfection or defect in the machinery, and that an inspection by defendant would have disclosed it. (*Stackpole* v. *Wray,* 99 App. Div. 263; 182 N. Y. 567; *Starer* v. *Stern,* 100 App. Div. 393; *Welsh* v. *Cornell,* 168 N. Y. 508; *Ingram* v. *Fosburgh,* 73 App. Div. 129; *Moran* v. *Mulligan,* 110 App. Div. 208; *Reiss* v. *N. Y. S. Co.,* 128 N. Y. 103.)

WILLARD BARTLETT, J. The plaintiff, a floorman in the service of the defendant corporation, was injured by the fall of a freight elevator upon which he had just stepped in order to place thereon a carriage which he had been directed to send down from the third story of the defendant's stable, where it was kept, to the ground floor where it was needed for use. The elevator was a simple, old-fashioned structure, operated by hand power, by means of an endless rope passing over a wheel at the top of the elevator shaft. It was suspended from a wire cable three-quarters of an inch thick, the upper end of which was wound around a drum above. This cable was passed once through a ring fixed in the middle of a crossbar at the top of the elevator, and the end was then turned back and fastened to the main cable by a single clamp. The clamp was three or four inches above the ring and the end of the cable, where it had been bent over so as to pass through the ring, projected six or eight inches above the clamp. The accident was manifestly due to the giving way of this clamp. It does not appear to have been seen by any witness after the elevator fell, but there was no break in the cable, which remained intact, and had evidently slipped through the ring and thus allowed the elevator to descend.

The contention in behalf of the plaintiff is that the evidence tended to establish negligence on the part of the defendant (1) in furnishing an insufficient and defective appliance and (2) in failing to provide for an adequate inspection thereof.

The elevator is characterized as dangerous because the sup-

porting cable was passed through the ring in the overhead crossbeam only once instead of twice, because the end was fastened to the main cable by only one clamp instead of two, and because there were no safety clutches. An expert witness called in behalf of the plaintiff testified that at the time of the accident it was usual in the construction of such elevators to pass the cable through the ring twice, to secure the end with two clamps, and to provide the elevator with safety clutches. Where the cable passes only once through the ring the entire strain comes on the clamp, minus the friction of the cable against the ring. If the cable is passed through the ring twice the clamp is relieved of three-quarters of the strain, according to this witness.

On a previous trial the plaintiff obtained a judgment which was reversed by the Appellate Division, a majority of the court holding that the evidence was insufficient to support the verdict, and the opinions on that appeal are printed in the record now before us. From these it appears that the evidence there under consideration must have been more favorable to the plaintiff than that on the trial now under review, for it is said in the dissenting opinion that it was testified by a mechanical engineer "that a single four inch clamp as described was unsafe to sustain a weight over 2,000 pounds and might not sustain that weight." There is no proof of this kind in the present record. No witness gave opinion evidence to the effect that the construction was dangerous in any respect or that it was unsafe for the purposes for which the elevator was designed. The strongest inference that could be drawn from the testimony of the expert witness already mentioned was that a different construction prevailed at the time of the accident and involved less strain upon the clamp, and even he conceded that three or four tons was a safe load for a steel cable three-quarters of an inch in diameter and that it could not come down if the single clamp was sufficiently long and absolutely secure. The combined weight of the carriage and plaintiff, when the elevator fell, could not have exceeded seventeen hundred pounds.

Whether we regard the elevator as an appliance or a place to work, the defendant can hardly be charged with negligence on account of any danger or defect in the original construction. Proof such as there was in this case to the effect that freight elevators of a similar character were usually supported by cables so adjusted and clamped as to distribute the strain more evenly than it was distributed between the cable and the clamp on this elevator does not amount to proof that this elevator was unsafe. It seems perfectly clear to me, therefore, that if there was nothing in the case except the evidence as to the character of the elevator and its method of support and operation, the accident which injured the plaintiff could not be attributed to the negligence of the defendant. There is evidence, however, to the effect that between May 1, 1900, when the defendant moved into the stable, and the 7th day of November of that year, when the accident occurred, the elevator had broken down so that it could not be used and had been repaired on two occasions — one in May and the other in July. This proof, together with the circumstances attending the fall of the elevator, when it was stationary and without any apparent cause, by the insufficiency of the clamp, may have been enough to call upon the defendant to give some explanation to relieve itself from responsibility for the accident, although this application of the doctrine of *Griffen* v. *Manice* (166 N. Y. 188) involves every possible assumption which could be made in favor of the plaintiff.

The testimony introduced in behalf of the defendant showed that it regularly employed the firm of James Murtaugh & Company to inspect the elevator in question and make all necessary repairs upon it. There appear to be two classes of firms or corporations in the city of New York who make a business of inspecting elevators — that is to say, testing them as to their carrying capacity, the weights which they will sustain, the strength of the cables and the sufficiency of the construction generally. One class makes such inspections for purposes f insurance; the other for purposes of repair. Mr. Murtaugh's firm belonged to the latter class. It was also.

engaged in the manufacture of elevators and dumbwaiters, and was a responsible house, which had enjoyed a first-class reputation for many years and carried on a very extensive business. The manager of the defendant corporation testified that it usually had its elevators inspected once in six months; that Mr. Murtaugh was employed to inspect the machine, go through it thoroughly and attend to anything that needed attention and put it in perfect condition. He further testified that he asked Mr. Murtaugh to inspect the elevator about the middle of July, and that he inspected it personally, and subsequently sent a man named Hansen to the stable to overhaul the machinery, who came there with an assistant and worked several days in putting the elevator in order. "After they were all finished," says this witness, "Mr. Murtaugh came and made another examination. He then reported to me as to the condition of the machinery. That the elevator was in perfect condition and safe in every way. After that there was never anything brought to my notice that made me have any doubt as to the absolute safety of that machine."

The mechanic who actually made the repairs, Hansen, was also called as a witness. He corroborated the testimony of the manager, described in detail the work which he did upon the elevator, and declared that when he left the machine it was in first-class order. He had been in the business of erecting and repairing elevators between nine and ten years and declared that he left this elevator upon the completion of his job in first-class order, clamp and everything included, and that he did not know of anything that could have been done to make it more secure than it was. In the course of his work he had tested it twice by loading carriages upon it and then hoisting it.

That some duty of inspection is imposed upon the master under such circumstances as are disclosed in the present case cannot be doubted; and negligence properly to inspect is the negligence of the master, whose negligence is not affected by the fact that he intrusts the function of inspection to a servant. (*Byrne* v. *Eastmans Co.*, 163 N. Y. 461.) I do not understand, however, that the judicial declarations which may

be found to this effect involve the implication that under all circumstances and in reference to every sort of appliance it is the duty of the master to inspect personally or through a representative for whose acts he is responsible, or that he may not in some cases be relieved of liability when he has intrusted the function of inspection to qualified persons of experience and recognized ability.   In *Devlin* v. *Smith* (89 N. Y. 470) the defendant was a contractor who undertook to paint the inside of the dome of the Kings county court house.   Knowing nothing of scaffold building he employed one Stevenson, an experienced scaffold builder, to erect the necessary scaffolding.   A portion of the scaffold gave way under Devlin, who was a workman in the defendant's employ, and he was killed.   The action was brought to recover damages on account of his death.   It was held that inasmuch as the defendant did not know or have reason to know of any defect in the scaffold it was not negligence for him to rely upon the judgment of Stevenson as to the sufficiency of the scaffold and the propriety of the mode of construction, and hence that the defendant was not liable.   As was pointed out by CULLEN, J., in *McGuire* v. *Bell Telephone Co.* (167 N. Y. 208) the application of the rule that the master is responsible for negligence to inspect depends on the nature of the work and the manner in which it is conducted.   That was a case in which a telephone lineman was injured by falling from a telephone pole and in which it was held that the defendant was chargeable with the duty of reasonable inspection to see that the pole was safe, although the pole was not the property of the defendant, but belonged to another corporation.   In the course of the opinion Judge CULLEN said : " Had the defendant contracted with the owner of the pole for its proper inspection and repair or replacement a different question would be presented and it might be argued that in securing such an agreement it had exercised reasonable care to provide its workmen with a safe place and safe appliances.   But as the defendant did not contract with others to inspect and repair the pole that duty rested upon it."

As illustrative of the proposition that circumstances may occur under which a master is justified in relying upon the care and diligence of others in the discharge of his obligations to those in his service reference may be made to *Carlson* v. *Phœnix Bridge Co.* (132 N. Y. 273) where it was held that a master was not liable for an injury to the servant caused by the breaking of a tool by reason of a hidden defect therein, where material of the best quality had been purchased by the master from reputable dealers as the best in the market and the tool which broke had been constructed therefrom by competent and skilled workmen. "Reasonable care and not the highest efficiency which skill and foresight can produce is the measure of the master's liability," said Judge Brown in that case, "and he performs his whole duty by using as much care in the selection of materials for the use of his servants as a man of ordinary prudence in the same line of business would, acting in regard to his own safety, use in supplying similar things for himself were he doing the work."

Upon the facts of this case it may be conceded and, indeed, must be held, that the master owed the servant the duty of reasonable inspection. The question is, how far was he bound to go in the performance of that duty? If the defendant's establishment had been a factory in which the plaintiff worked upon a machine liable to get out of order, so that regular inspection was required in order to maintain it in safe condition, it is clear that the master's reliance upon the assurance that it had been properly inspected and was in good order by an outside expert would not relieve him from liability if the inspection as a matter of fact had been insufficient. The duty imposed upon the master in such a case would relate directly to the very work in hand which the servant was employed to do. In the case, however, of an appliance like this freight elevator, which may be regarded as an accessory to the general work of the establishment and concerning the construction and safety of which the master can ordinarily possess no special knowledge, I think that so far as the persons in his service are concerned he may rely upon a regular inspection thereof by

experts in elevator construction, assuming, of course, that it was originally safe and adequate and that he promptly makes such repairs and alterations as such experts may advise.     In *Stott* v. *Churchill* (15 Misc. Rep. 80; affirmed, 157 N. Y. 692) it was held that the trial court committed no error in refusing to charge that if the jury found that the elevator had been built by reputable manufacturers and that the defendants had it regularly inspected by experts in that business and promptly executed the repairs and changes suggested by them they had performed their duty and were not liable for any injury caused by the breaking of the machinery.     That case, however, was an action against the lessees of a hotel by a guest who had been injured by the fall of a passenger elevator in the hotel building; and in the opinion of the Court of Common Pleas at General Term it is distinctly intimated that this exposition of the law, although not applicable to such an action, would have been correct if the plaintiff had been a servant seeking to recover from the master.     No opinion was written upon the affirmance of the judgment in this court.

To summarize my view of this case, I think that the only possible basis for any charge of negligence against the master is the failure properly to inspect; and that upon the uncontradicted evidence the master's duty in this respect was fully discharged by the inspection which was provided and the repair of the elevator as the result of such inspection.     It seems to me, therefore, that the judgment ought to be affirmed, with costs.

Cullen, Ch. J., Haight, Vann and Werner, JJ., concur; Edward T. Bartlett and Chase, JJ., dissent.

Judgment affirmed.