ABRAMOVITZ v. TENZER et al.

(Supreme Court, Appellate Division, First Department.  April 21, 1911.)

1. NEGLIGENCE (§ 37*)—CONDITION OF BUILDINGS—CARE REQUIRED.
   One erecting a building for the use of the public, and inviting the public to resort to it, impliedly undertakes that due care has been exercised in the construction of the building, and that it is reasonably safe for the purpose for which it is designed and used.
   [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 52, 53; Dec. Dig. § 37.*]

2. EVIDENCE (§ 590*)—WEIGHT—CONDITION OF BUILDINGS—CARE REQUIRED.
   Where, in an action for injuries to a theater patron by the collapse of the floor of the lobby, the uncontradicted testimony of the architect and contractor showed that the collapse was caused by a latent defect in a bridle iron sustaining the beams, that the defect was not discoverable, and that the bridle irons were purchased from a well-known concern dealing therein, and there was no fact rendering the testimony suspicious, the court could not reject the testimony, but must hold that due care in the construction of the building had been exercised.
   [Ed. Note.—For other cases, see Evidence, Dec. Dig. § 590.*]

Appeal from Appellate Term.

Action by Fannie Abramovitz against Michael Tenzer and another. From a determination of the Appellate Term, affirming a judgment for plaintiff, rendered by the Municipal Court of the City of New York, defendants appeal.  Reversed, and new trial ordered.

See, also, 127 N. Y. Supp. 1109.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

Henry Greenberg, for appellants.
Nicholas A. Heymsfeld, for respondent.

SCOTT, J. This is an appeal by the defendants from a determination of the Appellate Term, affirming a judgment of the Municipal Court. The appellants owned a building at No. 134 Essex street, in the city of New York, which they altered into a moving picture theater. The alterations embraced the erection in the front part of the building of a small lobby. On April 27, 1910, a few days after the alterations had been completed, the plaintiff, having purchased a ticket, was standing in the lobby awaiting an opportunity to enter the theater, when the floor at one end collapsed and fell; plaintiff falling with it and sustaining the injuries for which she has received damages, the amount of which is not questioned. The complaint contains two counts, one for negligence and one for breach of contract; and at the trial the plaintiff elected to stand on the latter ground.

Plaintiff offered no evidence as to the cause of the accident. The defendants' proof showed that they had employed an architect to prepare plans and specifications and superintend the work of alteration, that the plans and specifications were approved by the building department, and that a contractor of experience was employed to carry them out. After the alterations had been completed and before the theater opened, the work was inspected by the architect, and by inspectors of the police, fire, and building departments. From an examination made after the accident, the defendants' witnesses were of opinion that it had occurred in consequence of the breaking of what is known as a "bridle iron," which held up the beams at one corner of the lobby. Of such "bridle irons" there was one at each corner of the lobby, capable of holding seven or eight tons of weight, besides a number of smaller ones. It was one of the larger irons which had broken, and the break was found to have resulted from a latent defect in the iron, consisting of what is known as a "hair crack" inside the iron, which the witnesses testified could not be discovered either by inspection or by a hammer test. The contractor testified that the "bridle irons" (24 in all) had been purchased from a well-known and long-established concern dealing in such goods, and both the architect and the contractor testified that they had examined and tested each bridle iron before it was put in the work, and that they found no evidence of any defect.

[1] There is no substantial dispute as to the law applicable to the case. The defendants were not absolute insurers of the safety of the structure erected by them; but having erected the structure for the use of the public, and having invited the public to resort to it, the defendants held out to the public and impliedly undertook that due care had been exercised in its erection, and that the building was reasonably safe for the purpose for which it was designed and used. Schnizer v. Phillips, 108 App. Div. 17, 95 N. Y. Supp. 478; Fox v. Buffalo Park, 21 App. Div. 321, 47 N. Y. Supp. 788, affirmed 163 N. Y. 559,

57 N. E. 1109. The evidence in behalf of defendants, if believed,
indicated that the defendants, as well as their architect and contractor,
had exercised a reasonable degree of care in planning and executing
the alterations of the building, and that the defect which led to the
accident was one which could not have been discovered by the exercise
of any care which defendants or their employés could reasonably have
been called upon to exercise. This evidence was wholly uncontra-
dicted; no attempt being made to show, by expert evidence or other-
wise, that such a defect in the iron as that to which the accident was
attributed could have been discovered by any test known to architects
and builders. As it stood, therefore, if believed, the defendants' evi-
dence completely absolved them from any culpable fault.

The trial justice, therefore, who tried the case without a jury, must
either have erred in the law, and held the defendants to an unwarrant-
able responsibility, or have disbelieved the evidence of the architect
and contractor. Both of these witnesses were, in a sense, interested,
because lack of due care was imputed to them; and the question is
whether or not this fact justified the rejection of their uncontradicted
testimony. The general rule is said to be that when a witness is in-
terested in the question, though he is not impeached or contradicted,
his credibility is a question for the jury, and the court is not warranted
in directing a verdict upon his testimony alone; and the same rule
applies to the testimony of two witnesses equally interested and testi-
fying to the same facts. Saranac R. R. Co. v. Arnold, 167 N. Y. 368,
60 N. E. 647. There is no question in the present case of directing a
verdict, and there is still to be considered the rule which should be
applied in estimating the value of the evidence of an interested wit-
ness. In the first place, it is obvious that it is not obligatory to reject
his evidence merely on account of his interest, nor should it be re-
jected capriciously or arbitrarily. The question was discussed at some
length in Hull v. Littauer, 162 N. Y. 569, 57 N. E. 102, and the fol-
lowing rule was laid down:

"Where, however, the evidence of a party to the action is not contradicted
by direct evidence, nor by any legitimate inferences from the evidence, and
it is not opposed to the probabilities, nor in its nature surprising or sus-
picious, there is no reason for denying to it conclusiveness."

In support of the rule the court cited Lomer v. Meeker, 25 N. Y.
361, and Kelly v. Burroughs, 102 N. Y. 93, 6 N. E. 109, which are
to the same effect.

[2] In the present case the testimony of the architect and contractor
was not contradicted by direct evidence, and we are unable to draw
any contradictory inferences from any of the evidence in the case.
Nor is there anything in the evidence, or any fact within our knowl-
edge of which we may take judicial notice, which renders the testi-
mony of defendants' witnesses surprising or suspicious. For these
reasons, we do not consider that the trial justice was justified in re-
jecting the evidence of defendants' witnesses, notwithstanding their
interest in the result. Of course, we do not know that he did reject
it; but, if he did not, he erred in the law as to the degree of respon-
sibility resting upon defendants. In either case, the judgment was er-
roneous.

The determination of the Appellate Term and the judgment of the Municipal Court must be reversed, and a new trial ordered, with costs to the appellant in this court and in the courts below to abide the event. All concur.