RUMETSCH v. JOHN WANAMAKER, NEW YORK, Inc.

(Supreme Court, Appellate Division, Second Department. January 10, 1913.)

1. CARRIERS (§ 280\*)—ELEVATORS IN BUSINESS BUILDINGS—DUTY OF OWNERS —INVITEES.

An owner or occupier of a retail store building, maintaining an elevator therein for the use of customers, is not an insurer of the safety thereof, but is only required to exercise reasonable care in the character of the appliances provided, and in their maintenance and operation.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1085–1092, 1098–1106, 1109, 1117; Dec. Dig. § 280.\*]

2. CARRIERS (§ 293\*)—DANGEROUS APPLIANCES—ELEVATORS.

Defendant in 1907 employed high-grade elevator manufacturers of wide mechanical experience to install certain elevators in a store building, under a contract requiring the cars to sustain loads much greater than that placed upon them at the time a steel strap connecting the cage with an I-beam broke, on April 27, 1909, causing injury to plaintiff, a customer of the store. The strap hanger was an appliance in common use, though there was evidence that other types of suspending straps were to be preferred. The elevators were accepted after having been tested by an inspector of the department of buildings in the borough of Manhattan, who testified that he examined all parts of it, including the part of the strap that broke, and reported it good. The same inspector examined the same elevator on behalf of the city March 25, 1909, and pronounced it O. K., and it had also been inspected as to construction,

design, size, and strength by inspectors of an insurance company prior to the accident. In October preceding the accident defendant requested the manufacturer to send its most expert and practical man to inspect the elevator system, which was done, and a report given that it was "all right." *Held*, that the breaking of the band under such circumstances could not have been reasonably anticipated by an ordinarily prudent person, and that defendant was not negligent. .

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1188; Dec. Dig. § 293.*]

Hirschberg and Rich, JJ., dissenting.

Appeal from Trial Term, Kings County.

Action by Matilda Rumetsch against John Wanamaker, New York, Incorporated. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

Frank V. Johnson, of New York City (Herrick C. Allen, of New York City, on the brief), for appellant.

Herbert C. Smyth, of New York City (James B. Mackie, of New York City, on the brief), for respondent.

BURR, J. On April 27, 1909, defendant conducted a department store for the sale of merchandise in the borough of Manhattan and city of New York. For the convenience of its patrons, it maintained and operated several passenger elevators running from the basement to the upper floor of the building. On the date named, plaintiff, a customer, entered the car of one of these elevators at the third floor, to be carried to the main floor. At some point between the place of entry and the basement the car began to suddenly and rapidly descend, finally striking with great violence upon the bumpers at the bottom of the shaft. In consequence thereof plaintiff was thrown down and sustained serious injuries, for which she has recovered a verdict, and from the judgment entered thereon, and from an order denying a motion for a new trial, this appeal comes.

The elevator car was suspended from two steel I-beams by means of two steel supports or straps which were about four feet in length. The upper portion of the strap was in a vertical position above the lower flange of the I-beam, and was bolted to the web. About midway of the strap, and where it came in contact with the flange, there was a right-angle bend called a "heel." The strap continued in a horizontal direction to a point above the extreme edge or nose of the flange, where there was another right-angle bend, and the strap was again continued in a vertical direction until it met a cross-beam, to which it was fastened by bolts and nuts. There was a space between the horizontal part of the strap and the flange, starting from the heel of the strap and extending to the nose of the flange, owing to a curve in the latter. There is a conflict of evidence as to the width of this space, but there is some testimony that, starting from the heel, it gradually increased until, at the point where the second right-angle bend

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

occurred, it was from one-eighth to three-sixteenths of an inch in width. The strap, in passing over this point, did not touch the edge of the flange, and was there unsupported. After the accident it appeared that the cause of the fall of this elevator car was the breaking of each of these straps at the point called the heel. There was evidence to the effect that the operation of an elevator, hung upon straps as above described, produced a slight vibration at the point where the strap turned over the nose of the flange, and that this had an effect upon the metal, sometimes termed "crystallization" and sometimes "fatigue of the metal." In consequence thereof, in time the tensile strength of the metal deteriorated.

There was also evidence from which the jury might have found that there was in common use at this time, upon elevators employed for similar purposes, other types of suspending straps, in which the bends were not at right angles but in an oblique direction, and in which the strap was attached to the I-beam, both at the web and at the outer edge of the flange. One of these types of strap was described as the "O. G." bend. Experts testified that the advantage of this type of strap lay in the fact that it avoided the vibration above referred to. In the words of one of plaintiff's experts, the object attained was "to avoid getting or putting a leverage strain on the strap. In making a right angle your weight multiplies by leverage. In making it oblique you have a straight tensile pull." One of the experts called for defendant, while not necessarily condemning the type of strap here employed, testified that:

"In order to do the work that this strap was required to do, it ought to have been a larger strap, or else of a different shape, and that it never had the original strength which it ought to have had for that place."

He testified that a strap of the size used could be safely depended upon to carry for an indefinite period about 1,440 pounds. The contract made by defendant for the construction of the elevators called for an elevator capable of sustaining a greater strain than this, and the load placed upon it by defendant exceeded it. While such a strap might for a time successfully endure the strain put upon it, constant repetition thereof would cause it to break.

The crucial question in this case, therefore, is: Was the defendant responsible for the installation and use of the straps here employed? There was some evidence on the part of plaintiff that there was a defect in the safety appliances, by reason of which the fall of the elevator was not checked, and also that prior to the date of the accident a crack appeared in the heel of one of the straps, which indicated a dangerous condition, and which might have been discovered through careful inspection. Each of these grounds of liability was, with the consent of plaintiff, withdrawn from the consideration of the jury, and defendant's liability, if any exists, must arise from negligence in the original installation and subsequent use. It appeared, without substantial dispute, that the mechanism which in this instance proved insufficient was installed in the year 1907, and accepted by defendant in October of that year, pursuant to a contract with the Otis Elevator Company. It was conceded that this was a concern of high reputation in the manufacture, construction, and installation of elevators,

ranking among the foremost in the country. As we have pointed out, the contract called for an elevator capable of carrying a working load much greater than that imposed upon it at the date of the accident, or, so far as the evidence discloses, at any previous time. After the work was completed, and delivered to defendant by the contractors as a compliance with the contract, the elevator was tested by an inspector in the employ of the department of buildings in the borough of Manhattan, who testified that he examined all parts of it, including the "heel-hitch" and supports; that he did not report "anything as being imperfect or wrong and defective with respect to that machinery and mechanism, or the supports or straps, or anything of that kind." On the contrary, he says, "I reported it good." The same inspector examined the same elevator in behalf of the city on March 25, 1909, less than one month before the accident, and then pronounced it "O. K." Defendant also made an agreement with an accident insurance company, having a skilled corps of inspectors, to have this elevator regularly inspected every three months. This was done, and on no occasion was attention called by any of the inspectors, either of the Otis Elevator Company, the city, or the insurance company, to any fault or defect in the condition of the straps in question, either as to their construction, design, size, or strength. In October preceding the accident, in anticipation of the holiday trade, defendant, through one of its employés, communicated with the Otis Elevator Company, and requested it to send the most expert and practical man in its employ to make a general inspection of every part of the cars and machinery of every elevator system, to see if they were in good condition. This was done, and not only was no fault or criticism made upon this elevator, so far as the straps were concerned, but the Otis Elevator Company gave defendant "a clean, clear bill of health on all conditions as to any mechanical trouble with the elevator system." It reported everything "all right." In addition to this, it appeared that the elevator was at all times under the watchful care of competent mechanics employed by defendant, whose duty it was to watch for any defects which might arise from wear and tear. Inasmuch as plaintiff withdrew her contention that there was anything in the appearance of the mechanism prior to the accident which would indicate dangerous defects by reason of use, the sufficiency of their inspection in these respects may not be questioned.

[1] The duty imposed upon owners or occupants of buildings where elevators are furnished for the use of persons lawfully therein is that of reasonable care in the character of the appliances provided, and in the maintenance and operation of the same. Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630; s. c. 74 App. Div. 371, 77 N. Y. Supp. 626; Grifhahn v. Kreizer, 62 App. Div. 413, 416, 70 N. Y. Supp. 973, affirmed 171 N. Y. 661, 64 N. E. 1121.

[2] Upon the evidence here presented, defendant invoked the application of the rule that, if the strap broke because of a defect in the original construction thereof (and plaintiff does not contend that there is any other cause therefor shown), so far as such original construction is concerned, it had a right to rely upon the superior skill

and knowledge of the constructors, if they were a firm of high reputation for skill and ability, as is concededly the case here. Devlin v. Smith, 89 N. Y. 470, 42 Am. Rep. 311; Carlson v. Phœnix Bridge Co., 132 N. Y. 273, 30 N. E. 750; Burke v. Ireland, 166 N. Y. 305, 59 N. E. 914; Kahner v. Otis Elevator Co., 96 App. Div. 169, 89 N. Y. Supp. 185, affirmed 183 N. Y. 512, 76 N. E. 1097; Cochran v. Sess, 168 N. Y. 372, 61 N. E. 639; Abramovitz v. Tenzer, 144 App. Div. 172, 128 N. Y. Supp. 951. Conceding the correctness of the general rule, plaintiff contends that the facts in this case bring it within an exception thereto, namely, that there was such a defect in the work of original construction that reasonably prudent men knew, or should have known, that it was of a character which made the elevator and its appliances a menace or danger to human life or safety. Cochran v. Sess, supra. We think that the evidence fails to establish this. The defect alleged is that either a strap of the form here employed should not have been used at all, or, if it was, that the weight of the steel should have been heavier, so as to avoid the consequences of possible vibration. But how was the defendant to know this? Its officers and agents were merchants, and not scientific men. They were neither engineers nor mechanics. Its business was of a commercial character only. It does not appear that the only form of strap then in common use was that having the bend described as the O. G. bend. On the contrary, it appears from the testimony of the experts called by plaintiff, either upon her direct case or in rebuttal, that there were several different types of strap in use upon some of the largest and presumably best constructed buildings in the borough of Manhattan, some of which were bent very nearly at right angles and in some of which there was a space between the horizontal part of the strap and a portion of the flange. It does not appear that there was any perceptible vibration in the horizontal part of the strap used at the nose of the flange. So far as there is any evidence on the subject, it is to the contrary. The space between the bent portion of the strap and the nose of the flange, variously stated to be from one-eighth to three-sixteenths of an inch in size, was hardly of a character to attract the attention of an unscientific man, even if he could be expected to know the consequences resulting therefrom.

But it may be urged that the size of the strap is something which any careful, observant man could perceive, and that the evidence is that it should have been of greater weight and thickness. But is the ordinarily prudent man, not scientifically trained, to be chargeable with negligence in failing to know the tensile strength of this band of steel, in the face of testimony by plaintiff's expert to the effect that "there is no man living that can say what strain it would take to break that piece of iron" (referring to a strap of similar construction and manufacture as the one that broke), and in the face of the further testimony that by actual experiment upon six other straps of similar size and construction the breaking load varied from 6,200 pounds to 32,000 pounds. But respondent contends that this defect in construction was so open and obvious that at least it should have been apparent to defendant's employés, its chief engineers, its superintend-

ent of mechanical construction, and the engineer whose duty it was to inspect the mechanical part of these elevators twice in every week, and who did so, and for their failure to discern this defect in construction and to advise its remedy defendant is responsible. The application of such a rule in this case would lead to this result. If defendant had taken no pains to exercise constant supervision over its elevator systems, it could have safely relied, so far as liability for negligence arising out of original construction is concerned, upon the fact that the elevator was constructed and furnished to it by a competent and skilled contractor, without suggestion or interference upon its part. But, having employed mechanics to examine as to depreciation by wear and tear, it must be held liable for insufficient inspection by such employés in respect to original construction, a matter about which they had no concern. But, suppose that these mechanics had advised defendant that the original construction was dangerous, must it at its peril accept their opinion as against that of the skilled engineers of the contractor who had pronounced it safe? If it had called upon still a third engineer for an opinion upon a subject upon which it had no knowledge, and he had advised that the appliance was safe and efficient, could it rely upon this, or must it seek the advice of a fourth or a fifth expert? And, if the experts differ, who is to decide between them? Must defendant, at its peril? But each of these mechanics when called as a witness testified, as did also the inspectors sent in behalf of the city and the insurance company, that he carefully examined the I-beams, straps, and bolts, and that there was nothing in the form or construction thereof which appeared to him to be defective or which was not right and proper. We fail to find any evidence on the part of either plaintiff or defendant that the ordinary layman, or even the skilled mechanic who was not a mechanical engineeer, did or could be expected to condemn the form of construction employed, or the size of the strap used as one openly or obviously dangerous.

The learned trial justice submitted this question to the jury:

"Was that [referring to this form of construction] so openly and obviously unfit for the purpose, incapable of supporting the burdens which would ordinarily be imposed upon it, that the owner of the building, the defendant here, should by the exercise of reasonable care ascertain that fact?"

A verdict based upon an affirmative answer to that question is without evidence to support it.

Respondent contends that the case of Stott v. Churchill, 15 Misc. Rep. 80, 36 N. Y. Supp. 476, affirmed without opinion, 157 N. Y. 692, 51 N. E. 1094, is a conclusive authority in support of the contention that while the rule that if the elevator and its machinery were built by reputable manufacturers, and the defendant had it regularly inspected by experts in that business and promptly executed the repairs and changes suggested by them, it performed its duty, and is not liable for any injury caused by the breaking of the machinery, may be applicable in the case of a servant against master, it does not apply in the case of a guest of a hotel making use of the elevator service, and that plaintiff occupies a similar relation to defendant. If this case is support for the contention that the highest degree of care,

such as is required of a railroad company with regard to its tracks, cars, and appliances, obtains in such a case as this, as distinguished from the rule of reasonable care, the later case of Griffen v. Manice, supra, must be held to control. But in that case (Stott v. Churchill, supra) it appeared that the defect which caused the injury, namely, the corrosion of rods in the cylinder heads, "was palpable to any one of common observation and intelligence had the rods been examined at the place where it existed," and therefore in that case it was properly left to the jury under the circumstances to determine the question of prudence and care. Defendant's liability does not turn upon the question whether the jury believed the experts who pronounced the device inadequate, but upon the question whether it was culpably negligent in supplying the same. Rath v. Transit Development Co., 150 App. Div. 750, 135 N. Y. Supp. 229. To hold defendant responsible under the circumstances here disclosed would, in effect, make it liable as an insurer, rather than because of the want of exercise of reasonable care.

The judgment and order should be reversed, and a new trial granted, costs to abide the event.

JENKS, P. J., and WOODWARD, J., concur. HIRSCHBERG and RICH, JJ., dissent.

