MATILDA RUMETSCH, Appellant, v. JOHN WANAMAKER, NEW YORK (INCORPORATED), Respondent.

Negligence — elevators — duty and liability of corporation operating elevator in department store to have it inspected — whether such inspection was properly made is a question of fact for a jury.

1. It is the duty of a corporation maintaining and operating an elevator, for the conveyance of customers and others, to have the elevator inspected from time to time and to employ persons of reasonable skill and experience to inspect it, and the corporation is responsible for the negligence of such inspectors in performing their work.

2. In an action for personal injuries received by the fall of a passenger elevator in defendant's store it appears that the elevator was made and installed by competent and reputable manufacturers, but it is claimed that from the unusual shape of the steel straps by which the elevator was attached to the beams which supported it and the manner in which they were placed, the straps were not strong enough to support the load the elevator was intended to carry and to withstand the continuous strain and vibration caused by the starting, stopping and running of the elevator. The straps in question were in plain sight and the defects therein could have been seen by defendant's engineers and inspectors. *Held*, that in view of the unusual construction of the supporting straps and the increased strain upon them caused thereby the question of fact, whether the inspectors employed by the defendant were negligent in the performance of their duty, was properly submitted to the jury. (*Stott* v. *Churchill*, 157 N. Y. 692, followed; *Devlin* v. *Smith*, 89 N. Y. 470; *Young* v. *Mason Stable Co.*, 193 N. Y. 188, distinguished.)

*Rumetsch* v. *Wanamaker, New York, Inc.*, 154 App. Div. 800, reversed.

(Argued October 7, 1915; decided December 14, 1915.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 10, 1913, reversing a judgment in favor of plaintiff entered upon a verdict and granting a new trial. The Appellate Division in its order stated that the judgment is reversed upon questions of law only, and

that the questions of fact involved in the case have been passed upon by it and affirmed.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Herbert C. Smyth* and *George Parr* for appellant. The court below was in error in holding that the evidence did not sustain a finding of negligence. (*Sciolaro* v. *Asch*, 198 N. Y. 77; *Stott* v. *Churchill*, 15 Misc. Rep. 80; 157 N. Y. 692; *Grifhahn* v. *Kreizer*, 62 App. Div. 413; 171 N. Y. 661; *McPherson* v. *Buick Motor Co.*, 153 App. Div. 474; 160 App. Div. 55; *Kahner* v. *Otis Elevator Co.*, 96 App. Div. 169; 183 N. Y. 512.)

*Frank Verner Johnson* and *James F. Mahan* for respondent. The verdict of the jury, based upon a finding that the appliances designed and installed by the elevator constructors for the support of the car were so obviously unfit for the purpose that this defendant in the exercise of reasonable care should have known that fact, is without evidence to support it. (*Griffen* v. *Manice*, 166 N. Y. 188; *Griffen* v. *Manice*, 74 App. Div. 371; 174 N. Y. 505.) The defendant was justified in relying upon the superior skill and knowledge of elevator constructors of high reputation for skill and ability in determining the adequacy and sufficiency of the devices used by such constructors in the original construction and installation of the elevator in question, both as to the design of such devices and the character and quality of the material of which they were made; and the refusal of the court to so instruct the jury was error. (*Devlin* v. *Smith*, 89 N. Y. 470; *Burke* v. *Ireland*, 166 N. Y. 305; *Kahner* v. *Otis Elevator Co.*, 96 App. Div. 169; 183 N. Y. 512; *Cochran* v. *Sess*, 168 N. Y. 372; *Carlsen* v. *Phœnix Bridge Co.*, 132 N. Y. 273; *Young* v. *Mason Stable Co.*, 193 N. Y. 188; *Stubley* v. *Allison Realty Co.*, 124 App. Div. 162; *Abramovitz* v. *Tenzer*, 144 App. Div. 170; *Stackpole* v.

*Wray*, 99 App. Div. 262; *Davies* v. *Pelham H. E. Co.*, 65 Hun, 573; *Rath* v. *Transit Development Co.*, 150 App. Div. 750.)

Chase, J.   On the afternoon of April 27, 1909, a passenger elevator in regular use at the well-known department store of the defendant in the city of New York suddenly fell.   The plaintiff, among others, was in the elevator at the time of its fall, and sustained personal injuries for which this action is brought.   The immediate cause of the fall was the breaking of two steel straps or supports, by which the elevator car was attached to certain I beams, a part of the elevator construction.   A description of the straps and their relation to and connection with the elevator car and machinery is given by Justice Burr in the opinion written by him at the Appellate Division when the judgment entered on the verdict in favor of the plaintiff was reversed by that court.   (*Rumetsch* v. *Wanamaker, New York, Inc.*, 154 App. Div. 800.)   The straps that broke were designed, manufactured and installed by the Otis Elevator Company for the purpose of supporting the hoisting cables of the elevator as a part of, and pursuant to a contract between the defendant and said company, and in accordance with specifications requiring the construction of a passenger elevator with a carrying capacity of 2,500 pounds.   The defendant accepted the elevator on October 29, 1907, and it was used with the straps as described until it fell about eighteen months thereafter.

The questions to be considered on this appeal are few, because of the stipulations and rulings made at the trial. All questions of the defendant's negligence other than those relating to the sufficiency of the supporting straps as installed, and the propriety of using and continuing to use the elevator with such straps thereon, were withdrawn from the jury by the consent of the plaintiff.   The court, without objection by the plaintiff, charged the jury that

"It has been admitted that this elevator was purchased of competent manufacturers; that the Otis Company was a competent and reputable manufacturer of elevators. So in that respect in regard to the purchase and primary installation of this elevator no charge of negligence can be sustained." The court left to the jury in substance the question whether, notwithstanding the defendant had purchased the elevator from and had the same installed by a competent manufacturer, the defects therein by reason of such straps were so open and so obvious that a prudent person should have known or have ascertained by inspection that the same was incapable or would become incapable of supporting the burdens which were imposed upon it.

The defendant insisted at the trial that there was no evidence to justify the court in submitting any question as to the defendant's negligence to the jury, and the Appellate Division has sustained such claim.

The duty of the defendant to inspect the elevator from time to time could not be delegated. As a corporation it had no personal identity. It could only act through others. In employing others to make the inspection it was its duty to employ persons of reasonable skill and experience to perform the duty so imposed upon it. For the failure of such person to make such reasonable inspection and to ascertain a defect that was open and visible to a person of such skill and experience the defendant is liable.

The jury could have found that the supporting straps placed vertically but so shaped as to have two right angles with a space between the angles of about three inches and also so placed that the horizontal part between said right angles had no support was not only unusual but substantially without precedent. They could also have found that the supporting straps so fastened would when used necessarily have some vibration arising from the starting and stopping of the elevator and the running of

the same.  The strain at the inner angle where each of
the straps broke was shown without contradiction to be
several times the strain of a strap without such angles.

It would not seem to require more than ordinary knowl-
edge and experience to appreciate that such construction
would materially increase the strain upon the straps and
at least require a corresponding increase in the size and
strength of the straps over such as are ordinarily used
when installed without right angles therein.

There was suspended from the straps the elevator,
which weighed about 3,000 pounds, in addition to its load
of passengers.  It was, as we have said, designed to
carry a load of 2,500 pounds.  At the time of the accident
there were eight or nine persons in the elevator car:

One of the defendant's experts testified that a safe load
for each strap as installed would not exceed 1,440 pounds
and another that it was possibly only 1,000 pounds.  The
expert first mentioned explains: " I mean by the safe load
that that is the load that could be repeated any number of
times without injuring the strap or hurting the material."
He further testified: " The conclusion I arrive at then is
that in order to do the work that this strap was required
to do it ought to have been a larger strap or else of a dif-
ferent shape and that it never had the original strength
which it ought to have had for that place  *  *  *.  It
was apparently weakened by that hardening that I say
existed at the angle.  *  *  *  The effect of a greater
load if very much greater than 1,440 pounds per strap
used constantly for a long period of time is to wear out
the strap and eventually break it, wear it out at the
weakest point in the corner  *  *  *.

" Q. This strap broke then because it had suspended
from it a load greater than its working load for a long
period of time, greater than it ought to have done, you
said ?

" A. For more repetitions than it ought.  By repetitions
I mean starting the elevator through a series of weeks

and months and over a year * * *. Vibration in some way weakens the iron and causes it eventually to break * * * Bending a piece of iron at right angles such as that was bent, is very apt to produce a hardening in the bend in the way that was; a sharp bend like that especially if it is bent cold. *It is something that every constructor ought to expect to find * * *.* If there is space between the underlying flange and the undersurface of the strap that will be a weaker construction than if you found it resting on the flange. That would be an additional reason why no more than 1,440 pounds per strap should be placed on it." The same expert testified that in condemning the straps he did so upon his examination which consisted "only in what I can see with my eye and what I can compute with my knowledge."

Another expert called by the defendant testified: "That the sharp bend * * * is not to be recommended as under such treatment the material is necessarily overstrained under even small loads."

The straps were in plain sight on the elevator and were seen by the defendant's engineers and inspectors. The question of the defendant's negligence as submitted to the jury has some evidence to sustain it. The measure of the defendant's duty was reasonable prudence and care. (*Griffen* v. *Manice,* 166 N. Y. 188; *Sciolaro* v. *Asch,* 198 N. Y. 77.) Reasonable prudence and care on the part of the defendant required an inspection of the elevator with such frequency and by persons with such knowledge and experience as should be reasonably required in view of the danger and risk involved in running an elevator and carrying passengers. invited by the owner to enter therein. The care should be commensurate with the danger. The duty of inspection in this case clearly required the employment of persons of skill and experience to make the inspection. An inspection by merchants and persons neither engineers nor mechanics, as

suggested by the Appellate Division, would not be an inspection commensurate with the danger.

The rule necessarily adopted by this court in *Stott* v. *Churchill* (157 N. Y. 692), in affirming the judgment of the General Term of the Court of Common Pleas (15 Misc. Rep. 80, 83) which affirmed a judgment entered upon a verdict in favor of the plaintiff, is applicable to this case. The elevator in that case was a hydraulic elevator made by Otis Brothers. It appeared in that case that the defendants upon taking a lease of a hotel had engaged men experienced in the business to examine the elevator and make necessary repairs, imposing no limitations as to what they should do in making the repairs. They did not remove the cylinder heads to examine portions of rods concealed therein, thinking that if any corrosion was taking place within the cylinders some evidence of it would be seen upon the exposed portions which were alternately within and without the water in the cylinder. Testimony was given by inspectors of elevators that it was not the custom to remove cylinder heads when no signs of rusting were discernible in the exposed portion of the piston rods. Two other inspectors testified that when the elevator was old they generally took off the cylinder heads in making an inspection. The accident occurred by reason of the breaking of a piston rod within a cylinder. The judgment sustained in that action was based upon a finding of the jury, in substance, that reasonable care required those in charge of the repairs and inspection to remove the cylinder heads for the purpose of examining the rods inclosed therein. The court was requested to charge: "If the jury find that the elevator and its machinery were built by reputable manufacturers and that the defendants had it regularly inspected by experts in that business, and promptly executed the repairs and changes suggested by them, they performed their duty and are not liable for any injury caused by the breaking of the machinery." The request

was refused. The court at the General Term of the Common Pleas, in referring to such request, said: "However correct an exposition of the law this might have been had the plaintiff been .a servant seeking to recover from the master for the negligence of a competent fellow servant, it was inapplicable to the case on trial. * * * A personal duty cannot be delegated to another so as to relieve the person bound to perform the duty from liability for its non-performance * * *. The defect, i. e., the corrosion, was palpable to any one of common observation and intelligence had the rods been examined at the place where it existed, and it was properly left to the jury under the circumstances to determine the question of prudence and care." The defendants were thus held for the negligence of trained inspectors employed by them. The decision in the *Stott* case was re-stated and approved by this court in *Sciolaro* v. *Asch* (*supra*). (See *Grifhahn* v. *Kreizer*, 62 App. Div. 413; affd., 171 N. Y. 661.)

In *Devlin* v. *Smith* (89 N. Y. 470) and *Young* v. *Mason Stable Co.* (193 N. Y. 188) the plaintiff was in each case an employee of the defendant, and it was held that the rules applicable to actions between master and servant should apply. In the *Devlin* case the plaintiff was injured by the fall of a scaffold erected by a competent scaffold builder, and in the *Young* case the plaintiff was injured by the fall of a freight elevator, and there was no evidence that the construction relied upon was dangerous. It was said in the opinion in the *Young* case that the elevator in question in that case may be regarded as an accessory to the general work of the defendant's establishment. The *Stott* case was considered in the opinion in the *Young* case and the fact that the *Stott* case was not one of a servant seeking to recover of a master is noted. These cases upon the facts peculiar to each should not be held to prevent the enforcement of the rule adopted in the *Stott* case and frequently approved in this court.

The duty of the defendant was to employ persons of reasonable skill and experience to inspect its elevator, and it was responsible for the negligence of such inspectors in performing their work.

We think in view of the unusual character of the supporting straps and the manifest multiplication of strain upon the inner angles thereof that it was a question of fact whether the inspectors employed by the defendant were negligent in the performance of their duty, which question of fact was properly left to the jury.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

HISCOCK, CUDDEBACK, HOGAN, CARDOZO and SEABURY, JJ., concur; WILLARD BARTLETT, Ch. J., absent.

Judgment accordingly.